

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-171-CV

WISE REGIONAL HEALTH SYSTEMS                          APPELLANTS
F/K/A DECATUR COMMUNITY HOSPITAL,
KATHI SINGH, R.N., SHIRLEY BEVIS, R.N.,
KELLI WEATHERLY, L.V.N., BETHANY
ISBELL, L.V.N., BETTY JEAN SNODGRASS, R.N.,
DEBBIE ATKINS, R.N., ROSEANN SMITH, R.N.
AND TRACI VANSCHUYVER, R.N.

V.

KATHI BRITTAIN, INDIVIDUALLY AND                          APPELLEES
AS NEXT FRIEND OF BRETT GENTRY,
DECEASED, AND BRETT MYRON GENTRY,
INDIVIDUALLY

------------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

## OPINION

------------

## I.    INTRODUCTION

This is an interlocutory appeal from the denial of Appellants' plea to the

jurisdiction. Appellants Wise Regional Health Systems f/k/a Decatur Community

Hospital, Kathi Singh, R.N., Shirley Bevis, R.N., Kelli Weatherly, L.R.N., Bethany

Isbell, L.R.N., Betty Jean Snodgrass, R.N., Debbie Atkins, R.N., Roseann Smith, R.N. and Traci Vanschuyver, R.N., appeal the trial court's denial of their plea to the jurisdiction premised on sovereign immunity. We affirm in part and reverse in part.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Sixteen-year old Brett Gentry was evaluated at her primary care doctor's office on December 17, 2002, complaining of high temperature, cough, congestion, and chest pain. Two days later, her mother took her to Decatur Community Hospital emergency room with complaints of coughing, cramping, vomiting, weakness, and dizziness. While in the hospital, she complained of difficulty breathing and chest pain and had low blood pressure and several episodes of low oxygen saturation. Two days after being admitted and while being transported to ICU, Gentry suffered a cardiopulmonary arrest, from which she could not be resuscitated.

Kathi Brittain, acting individually and as next friend of Gentry, and Brett Myron Gentry, individually,[1] filed a wrongful death and survival action under the Texas Tort Claims Act (TTCA) against Appellants, alleging that Appellants were

---

[1] Appellees Kathi Brittain and Brett Myron Gentry hereinafter will be referred to as Brittain.

2

negligent and grossly negligent in diagnosing and treating Gentry, which proximately caused Gentry's death.

Appellants filed a plea to the jurisdiction, asserting that they are a governmental unit (and its employees) and are entitled to sovereign immunity as to all of Brittain's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.001(3)(B) (Vernon 2005). Specifically, Appellants asserted that Brittain's allegations failed to waive sovereign immunity under the Texas Tort Claims Act because none of the claims alleged that a condition or use of tangible personal property was a proximate cause of Gentry's death. Appellants attached to and incorporated into their plea to the jurisdiction the reports of three expert witnesses retained by Brittain as well as the depositions of those three witnesses, and further asserted that there was no evidence in Brittain's experts' depositions that any such condition or use proximately caused the patient's death.

In a supplement to Brittain's third amended original petition, which the trial court granted leave to file on the day of the hearing on Appellants' plea to the jurisdiction, Brittain pleaded these potentially relevant allegations:

> [T]hat [Appellants] used and misused certain tangible personal property when caring for/treating Brett Gentry, and that Brett Gentry's damages, injuries, and death were proximately caused by the condition or use of certain tangible personal property. By way of example only, the Defendant Nurses misused the following

3

tangible personal property, among others, when caring for/treating Brett Gentry: an IV, medications (including Stadol), a pulse oxymeter, a blood pressure machine/cuff, an oxygen supply, an oxygen mask, [and] an ambu bag, and Defendant Vanschyver misused the following tangible personal property (among others) when caring for/treating Brett Gentry: a pulse oxymeter, syringes, oxygen supply, an oxygen mask, and an ambu bag. These lists are not exhaustive.

After a hearing, the trial court denied Appellants' plea, and they filed this interlocutory appeal.

## III.  ISSUE

Appellants' issue is that the trial court erred in denying their plea to the jurisdiction because Brittain's pleadings and the depositions of her experts, offered by Appellants, failed to establish a condition or use of tangible personal property and further failed to establish that any such condition or use was a proximate cause of Gentry's death.

## IV.  ANALYSIS

### A.  Sovereign Immunity and Standard of Review

There is no dispute that Appellant Wise Regional—and its employees who are the other Appellants and were acting within their scope of employment at all times relevant to this case—constitutes a governmental entity, and as such is entitled to claim sovereign immunity. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). Sovereign immunity has two

4

components: immunity from liability and immunity from suit. *Id.* Immunity from liability is an affirmative defense, while immunity from suit deprives a court of subject-matter jurisdiction. *Id.* The TTCA creates a unique statutory scheme in which these two immunities are coextensive: "Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter." Tex. Civ. Prac. & Rem. Code Ann. § 101.025(a) (Vernon 2005); *see Miranda*, 133 S.W.3d at 224. Sovereign immunity from suit defeats a trial court's subject-matter jurisdiction because, absent the State's consent to sue a governmental entity, a trial court has no basis for jurisdiction. *Miranda*, 133 S.W.3d at 225. Section 101.021 of the civil practices and remedies code waives the State's immunity under certain circumstances. Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005). A trial court's subject-matter jurisdiction is a question of law and reviewed de novo. *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007).

We focus first on the plaintiff's pleadings to determine whether the facts pleaded affirmatively demonstrate that jurisdiction exists. *Id.* The pleader has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Miranda,* 133 S.W.3d at 226 (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993)). We construe the pleadings liberally in favor of a plaintiff, looking to the pleader's

5

intent. *Id.* If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect in jurisdiction, the plaintiff should be afforded the opportunity to amend. *Id*. at 226–27. If the pleadings affirmatively negate the existence of jurisdiction, the plea to the jurisdiction may be granted without an opportunity to amend. *Id*. at 227.

A court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues. *Id.* (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). When a plea to the jurisdiction challenges the existence of facts alleged to establish the trial court's subject matter jurisdiction, the trial court must consider relevant evidence offered by the parties. *Id*. Where, as here, the jurisdictional challenge implicates the merits of the pleader's cause of action and the plea to the jurisdiction includes evidence, the trial court reviews the relevant evidence to determine if a fact issue exists. *Id.*

When evidence has been submitted that implicates the merits of the suit, we take as true all evidence favorable to the nonmovant. *Id*. at 228. We indulge every reasonable inference and resolve all doubts in favor of the nonmovant. *Id.* If the evidence is undisputed or fails to raise a fact issue on

the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id*.

The requirements that a cause of action must meet in order to come within the TTCA's waiver of governmental immunity are found in section 101.021 of the Act, which provides that, as applied to this particular case, Brittain must establish that Gentry's death was proximately caused by the negligence of a governmental employee acting within the scope of employment, that Gentry's death was caused by a condition or use of tangible, personal, or real property, and that Wise Regional would, if it were a private person, be liable to Gentry according to Texas law. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2). Specifically, the alleged negligence of Appellants must have involved a condition or use of tangible personal property, and the condition or use of the tangible personal property must be the proximate cause of the injury. *See id.; see also Tex. Tech Univ. Health Scis. Ctr. v. Lucero*, 234 S.W.3d 158, 169 (Tex. App.—El Paso 2007, pet. denied).

### B. Allegations of Failure to Act

Most of Brittain's allegations involve the failure of Appellants to act, rather than the condition or use of tangible personal property—including the failure to communicate with Gentry's physician in a timely manner, failure to promptly document vital signs, and failure to transfer Gentry to ICU once her

7

condition deteriorated. We agree with Appellants that the allegations of these "failures to act" are not sufficient to waive sovereign immunity. *See Somervell Cty. Healthcare Auth. v. Sanders*, 169 S.W.3d 724, 727 (Tex. App.—Waco 2005, no pet.)*; see also Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996) (holding that the failure to administer an injectable drug is a non-use of tangible property and does not fall under the waiver provisions of the TTCA); *Snelling v. Mims*, 97 S.W.3d 646, 654 (Tex. App.—Waco 2002, no pet.) (holding that plaintiff's petition alleging that the defendant nursing home failed to diagnose, treat and report injuries and supervise employees was not sufficient to waive immunity).

There are no allegations in the third amended original petition of acts or omissions other than failures to act. To this extent, we sustain Appellants' sole issue and hold that these claims are not sufficient to waive sovereign immunity.

## C. Medications

Brittain's supplement to her third amended original petition does contain allegations alluding to the use or misuse of tangible personal property that require our analysis of whether these pleadings, and the evidence produced at the hearing, support the trial court's denial of Appellants' plea to the jurisdiction. The most pivotal facts we find in the pleadings or evidence that

8

arguably involve a condition or use of property are those concerning Appellants' administration of certain medications to Gentry.

### 1. Use or Misuse

Appellants contend that Brittain did not allege that the nurses gave medication in an improper manner, but rather, she alleged only that Appellants failed to question Gentry's physician about his order prescribing these medications. Appellants reason that the failure to question the doctor about administration of medications is not a *use or misuse* of tangible personal property and does not support a waiver of sovereign immunity. We agree with Appellants' proposition that a failure to question a doctor about administering medications is not a use or misuse of tangible personal property; we do not agree with their interpretation of Brittain's allegations, which specifically state that "Defendant Nurses misused . . . tangible personal property . . . when caring for/treating Brett Gentry: an IV, medications (including Stadol) . . . ." These allegations fail to set forth any factual specifics as to how Appellants allegedly misused medications. But it is unnecessary to determine whether the conclusory nature of the pleadings makes them insufficient to establish waiver of sovereign immunity because the evidence offered at the hearing on Appellants' plea to the jurisdiction adds the necessary factual specifics.

9

Dr. Joseph Varon's deposition testimony expands upon and supports Brittain's claim that the nurses misused the medications by negligently administering them when they should not have done so, in addition to failing to question the attending physician's orders to give the medications. Dr. Varon testified that the nurses would have followed the standard of care if they had communicated with the doctor that the patient was hypotensive and had a low oxygen saturation and told him that they "d[idn't] think that it [was] safe to give [S]tadol." However, he was also adamant that "they gave medications that they should not have given on the basis of the clinical condition of [the] patient. . . . They failed by administering medication that should not have been administered to a lady under these conditions." Dr. Varon's deposition also contained the relevant colloquy:

> Q. And what you are saying [is] there is a physician orders [sic] for Stadol, but it's your opinion that the nurses should not have followed the physician order and given that medication to the patient?
>
> A. Correct, based on just common sense and, again acting as the patient advocate and knowing that the risk of giving [the] patient the agent far outweighs the benefit that the patient would get.

Not every pleading or item of evidence in support of that pleading—that medication contributed to an injury—constitutes a use or misuse of tangible personal property. *See Dallas County v. Alejo*, 243 S.W.3d 21, 27 (Tex.

10

App.—Dallas 2007, no pet.). For example, the *nonuse* of medication does not waive immunity. *Kassen v. Hatley*, 887 S.W.2d 4, 14 (Tex. 1994). In *Kassen*, a woman suffering from mental problems was taken to a public hospital. *Id.* Her prescription medication was confiscated by hospital personnel. Without returning her medication to her, the hospital released her. *Id.* Shortly thereafter, she committed suicide. *Id.* The court held that the failure to return the patient's medication to her upon discharge was a nonuse of tangible property that did not trigger waiver of sovereign immunity. *Id.* In another Supreme Court of Texas case, a hospital released a patient who subsequently murdered his estranged wife. *Clark*, 923 S.W.2d at 583. The issue before the court was whether the hospital's administration of an oral form of an anti-psychotic drug rather than an injectable drug constituted use or misuse of tangible personal property. *Id.* The court held that the substance of the claim was, rather, the failure to administer an injectable drug, which constituted a nonuse of tangible personal property and, thus, did not fall under the waiver provisions of the TTCA. *Id.* The court stated:

> There cannot be waiver of sovereign immunity in every case in which medical treatment is provided by a public facility. Doctors in state medical facilities use some form of tangible personal property nearly every time they treat a patient. Because of this fact, a patient suing for negligence could always complain that a different form of treatment than the one employed would have been more effective and still claim waiver under the Act.

*Id.* at 585–86.

11

Some Texas courts have found the *dispensing* of medications by a hospital a "use" falling squarely within the waiver statute. *See Quinn v. Mem'l Med. Ctr.*, 764 S.W.2d 915, 917 (Tex. App.—Corpus Christi 1989, no writ); *see also Edinburg Hosp. Auth. v. Trevino*, 904 S.W.2d 831, 838 (Tex. App.—Corpus Christi 1995), *rev'd on other grounds*, 941 S.W.2d 76 (Tex. 1997); *Adams v. Rios*, No. 14-95-00239-CV, 1996 WL 337108, at *4 (Tex. App.—Houston [14th Dist.] June 20, 1996, no writ) (not designated for publication). In *Quinn*, a physician resident-in-training at a county hospital obtained a prescription from the hospital pharmacy for an abortion pill. While off duty, the doctor administered the pill to his pregnant girlfriend. The girlfriend suffered complications after taking the pill and was admitted to the hospital for surgery. *Quinn*, 764 S.W.2d at 916. The court held that the dispensing of the drug by the hospital pharmacy was a use of tangible personal property. *Id.* at 917. Similarly, in *Adams*, the court found the dispensing of a drug by the hospital's pharmacy a "use of tangible property [that] falls within the waiver of sovereign immunity under the [TTCA]." *Adams*, 1996 WL 337108, at *4. In contrast, the Waco court has held that a nursing home's distribution of medication according to a prescribing doctor's direction was insufficient to fall within the waiver because the essence of the claim was that

12

the nurses were aware of sedating side effects of the medication and failed to monitor the patient, who slipped and fell, and such failure to monitor was not a misuse of the medication. *See Somervell*, 169 S.W.3d at 728.

Viewing the pleadings and evidence in the light most favorable to Brittain—specifically the pleading that alleges Gentry's "death [was] proximately caused by the condition or use of [certain medications]" and the testimony from Dr. Varon that the nurses administered the medications to Gentry when they should have refused to do so—we hold that the pleadings and evidence suffice to establish a "use" of medications in this case sufficient to waive immunity under the TTCA.

## 2. Proximate Cause

In addition to the requirement of "use," the TTCA specifically states that the injury must be "so *caused* by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (emphasis added). Accordingly, the plaintiff must allege that the property's condition or use proximately caused the personal injury or death. *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–43 (Tex.), *cert. denied*, 525 U.S. 1017 (1998).

13

Proximate cause consists of cause-in-fact and foreseeability. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005). The test for cause-in-fact is whether the act or omission was a substantial factor in causing the injury, without which the harm would not have occurred. *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 45–46 (Tex. 2007); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). To establish cause-in-fact, or "but for" causation, a party must show that the defendant's negligence was a substantial factor in bringing about his injury without which no harm would have been incurred. *Ledesma*, 242 S.W.3d at 45–46; *Excel Corp. v. Apodaca*, 81 S.W.3d 817, 820 (Tex. 2002); *see also Salas v. Wilson Mem'l Hosp. Dist.*, 139 S.W.3d 398, 403 (Tex. App.—San Antonio 2004, no pet.).

Appellants focus on a line of cases that uses the phrase "instrumentality of harm" to describe proximate cause. And we agree that some Texas courts use this phrase to describe proximate cause under the TTCA. *See McClain v. Univ. of Tex. Health Ctr.*, 119 S.W.3d 4, 7 (Tex. App.—Tyler 2002, pet. denied) (using the language "instrumentality of the harm" to describe proximate cause under the TTCA). However, Appellants construe the phrase "the instrumentality of harm" as though it requires sole causation. We disagree with this portrayal of causation. The causation requirement in section 101.021(2) is one of proximate cause—not a heightened standard such as sole cause.

14

*Univ. of N. Tex. v. Harvey*, 124 S.W.3d 216, 220 (Tex. App.—Fort Worth 2003, pet. denied); *Michael v. Travis County Hous. Auth.*, 995 S.W.2d 909, 912–15 (Tex. App.—Austin 1999, no pet.); *see Bossley*, 968 S.W.2d at 342 ("Section 101.021(2) states that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible . . . property."). Proximate cause does not require a plaintiff to leap the high hurdle that Appellants suggest.

Liberally construing the pleadings in favor of Brittain, she alleged only a single conclusory statement that the laundry list of tangible personal property items, including medications, proximately caused the injuries and death of Gentry. These pleadings are not sufficiently specific, standing alone, to establish a waiver of sovereign immunity. *See Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 592 (Tex. 2001) (Hecht, J., concurring) (noting allegation that property was directly involved in actionable injury or death generally sufficient to survive a plea to the jurisdiction); *compare City of Dallas v. Heard,* 252 S.W.3d 98, 106 (Tex. App.—Dallas 2008, no pet. h.) (concluding factual allegations were sufficient that plaintiff was trapped in zoo enclosure when doors malfunctioned so as to allow gorilla to pick her up and throw her against wall), *with Ager v. Wichita Gen. Hosp.*, 977 S.W.2d 658, 660 (Tex. App.—Fort Worth 1998, no pet.) (holding conclusory allegation that

failure to recognize symptoms resulted from misuse or condition of medical devices including stethoscopes and thermometers and that such was a proximate cause of plaintiff's injuries failed to sufficiently allege that any tangible item of property or its use was a contributing factor of plaintiff's injuries to constitute waiver of sovereign immunity).

Brittain's pleadings, however, do not stand alone. We must consider the evidence offered at the hearing, which consisted of the three depositions of Brittain's expert witnesses offered by Appellants. Appellants argue that, regardless of the level of proximate cause required by Texas law, Brittain has failed to raise a fact issue as to the causation of any harm to Gentry by use of the medications in question and that the evidence Appellants offered establishes lack of causation as a matter of law. We disagree with Appellants that any burden was on Brittain in the first instance to raise a fact issue.

This is not a review of a "no evidence" summary judgment. Appellants are held to the same burden as a movant for a *traditional* summary judgment, and must negate jurisdiction as a matter of law. *Miranda,* 133 S.W.3d at 227–28 (stating governmental entity held to same standard on plea of jurisdiction as movant for summary judgment under rule 166a(c)); *Hendee v. Dewhust*, 228 S.W.3d 354, 366 (Tex. App.—Austin 2007, pet. denied) (same)*;*

16

*Dallas County v. Wadley*, 168 S.W.3d 373, 376–77 (Tex. App.—Dallas 2005, pet. denied) (same).

A plaintiffs is not required to show a disputed material fact issue regarding jurisdiction where facts underlying the merits and subject matter jurisdiction are intertwined until *after* the defendant asserts and supports with evidence that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228 (holding plaintiffs required to show a disputed material fact issue exists regarding the jurisdictional issue where facts underlying the merits and subject matter jurisdiction are intertwined *after* State asserts and supports with evidence that trial court lacks subject matter jurisdiction); *Wadley*, 168 S.W.3d at 376–77 (rejecting county's argument that plaintiffs presented "no evidence" that county had actual knowledge of dangerous condition of elevator because plaintiffs had no burden to present evidence of county's knowledge where county failed to meet its burden to first establish its lack of knowledge).

If the evidence merely creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder. *Miranda,* 133 S.W.3d at 228; *Tarrant County v. Morales*, 207 S.W.3d 870, 875 (Tex. App.—Fort Worth 2006, no pet.). Holding the governmental entity to the burden of meeting the traditional summary judgment standard of proof under rule 166a(c) protects plaintiffs from

17

having to "put on their case simply to establish jurisdiction." *Miranda*, 133 S.W.3d at 228 (quoting *Bland*, 34 S.W.3d at 554).

Our review of the evidence submitted by Appellants leads us to conclude that it supports, rather than negates, the allegations that the use of medications by Appellants was a contributing factor in causing Gentry's death. *See id.* Dr. Varon, a board certified physician in critical care and pulmonary and internal medicine, and a professor at the University of Texas School of Nursing in Houston, testified in a 2005 deposition taken by Appellants that, based on his review of the medical records, Gentry's condition significantly worsened from the time she entered the hospital on the night of December 19 until the time of her death. On the evening of December 20, her oxygen saturation level decreased to 81 percent fifteen minutes after her fourth dose of Stadol, even though she was already on oxygen by nasal cannula. She was then placed on a nonrebreather oxygen mask, another mode of providing supplemental oxygen; attempts were made to wake her up and make her cough; and calls were made to the treating physician and the nurse supervisor. At 12:10 p.m. on December 21, she had to be intubated and given CPR, but attempts to resuscitate her failed. The intubation her was appropriate based on at least three criteria: for more than 24 hours prior to her final "event" her oxygen requirements were too high, she was in impending respiratory failure, and she had been given

18

medications known to alter one's mental state, "so her ability to protect her airway was impaired."

Appellants also offered the deposition of Dr. Mark Entman, a board certified cardiologist and Chief of Cardiovascular Sciences at Baylor College of Medicine, an expert retained by Brittain regarding causation. Dr. Entman testified that, in his opinion, Gentry died a "cardiac death secondary to acute myocarditis of probable viral origin." In his opinion, the myocarditis itself was a secondary cause by "inducing an arrhythmia." There could have been a viral or, less likely, a bacterial infecting agent. With myocarditis, however it occurs, there is a significant risk of an arrhythmia, a departure from the normal beat of the heart, which in his opinion occurred in this case. In Dr. Entman's opinion, Gentry suffered a sudden cardiac death from an unexpected arrhythmia.

Dr. Entman did not believe that the patient's oxygen saturation level had anything to do with her death. In contrast, another causation expert hired by Brittain, whose deposition was also offered by Appellants, believed that the oxygen saturation level was very important, "a big thing." Dr. Guileyardo, a board certified clinical, anatomic, and forensic pathologist in Dallas, noted that Gentry's oxygen saturation level decreased significantly on several occasions as she progressed to cardiopulmonary arrest. He was of the opinion that she died of "idiopathic myocarditis" most likely associated with bacterial sepsis. He

defined myocarditis as inflammation of the heart muscle not due to coronary disease, lack of blood flow, or ischemia.

Dr. Guileyardo explained that myocarditis kills by causing the heart to fail or by causing a ventricular arrhythmia. He further testified that anything that causes damage, even of a small area, of the heart muscle can become the focus for an arrhythmia. He observed that the nurses' notes indicated that Gentry exhibited "hypoxia," meaning that Gentry's oxygen saturation was quite low several times. This was very important, he said, because hypoxia "intensifies the damage from myocarditis." In this case, in his opinion, the hypoxia working together with the myocarditis caused damage to the heart muscle, which caused the heart to go into the arrhythmia.

Viewing the evidence in the light most favorable to Brittain, a reasonable inference may be drawn from the medical testimony that the medications administered to Gentry caused or contributed to hypoxia, which concurred with the myocarditis in causing damage to the heart muscle, which resulted in Gentry's arrhythmia and death. Moreover, we have combed the voluminous record of testimony offered by Appellants and find no evidence that *no* such causal connection existed. Appellants took the experts' depositions but never inquired as to any causal effect of the medications. We conclude that Appellants failed to carry their burden to conclusively establish lack of causation

20

so as to require Brittain to come forward with affirmative evidence to raise a fact issue on her claim. Concerning the misuse of these medications as a proximate cause of her death, we hold that the trial court did not err in denying Appellants' plea to the jurisdiction. We overrule this portion of Appellants' sole issue.

### D. Use of Other Tangible Personal Property

In addition to alleging the use of medications, Brittain's supplement to her third amended original petition contains a litany of other tangible personal property that Brittain claims Appellants used or misused when treating Gentry, to wit: an IV, a pulse oxymeter, a blood pressure machine and cuff, an oxygen supply, an oxygen mask, an ambu bag, and syringes.

While we agree that Brittain has pleaded that Appellants used or misused these items of tangible property, we do not agree that Brittain has pleaded sufficient factual allegations that the use or misuse of these additional items caused or even contributed to Gentry's death, and no evidence offered at the hearing on the plea to the jurisdiction tended to establish any causal connection between use of those items and any harm to Gentry. *See Ager*, 977 S.W.2d at 662 ("Without proof that a specific act or item of property contributed to injury, there can be no proximate cause."). However, these pleadings do not affirmatively negate jurisdiction. *See Holland*, 221 S.W.3d at 643. In such

21

cases, the plaintiff should ordinarily be afforded the opportunity to re-plead. *Id.; see also Miranda*, 133 S.W.3d at 226–27. But, as a practical matter, Brittain has already had the opportunity to re-plead. Brittain's supplement to her third amended petition clearly was an attempt to re-plead to cure the jurisdictional defects raised by the plea to the jurisdiction. Therefore, she does not need, nor is she entitled to, another opportunity to re-plead*. See Miranda,* 221 S.W.3d at 231.

## V.    Conclusion

Having overruled in part and sustained in part Appellants' sole issue, we affirm the trial court's order denying Appellants' plea to the jurisdiction as to Brittain's claims that are based on the use of the aforementioned medications and remand those claims to the trial court for further proceedings. We reverse the trial court's order denying their plea to the jurisdiction as to Brittain's claims that are based on failures to act and dismiss those claims for want of subject matter jurisdiction. Finally, we reverse the trial court's order as to Brittain's remaining claims alleging use of tangible personal property and dismiss those claims for want of subject matter jurisdiction.


ANNE GARDNER
JUSTICE

PANEL:    CAYCE, C.J.; DAUPHINOT and GARDNER, JJ.

22

DELIVERED:  September 25, 2008