

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-12-00116-CV

| | | |
|---|---|---|
| Texas Department of Criminal Justice | § | From the 342nd District Court |
| v. | § | of Tarrant County (342-246350-10) |
| Bonnie Ledbetter, Individually and as Representative of the Estate of John Ledbetter, and Freddie Ledbetter, Callie Ledbetter, Amber Bogusch, Ashley Ledbetter, and John Ledbetter, Jr. | § | December 21, 2012 |
| | § | Opinion by Justice Gardner |

## JUDGMENT

This court has considered the record on appeal in this case and holds that there was no error in the trial court's order. It is ordered that the order of the trial court is affirmed.

It is further ordered that appellant Texas Department of Criminal Justice shall pay all costs of this appeal, for which let execution issue.

SECOND DISTRICT COURT OF APPEALS

By_____
Justice Anne Gardner



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00116-CV

---

TEXAS DEPARTMENT OF
CRIMINAL JUSTICE

APPELLANT

V.

BONNIE LEDBETTER,
INDIVIDUALLY AND AS
REPRESENTATIVE OF THE
ESTATE OF JOHN LEDBETTER,
AND FREDDIE LEDBETTER,
CALLIE LEDBETTER, AMBER
BOGUSCH, ASHLEY LEDBETTER,
AND JOHN LEDBETTER, JR.

APPELLEES

----------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

## I. Introduction

The Texas Department of Criminal Justice (the Department) appeals the trial court's partial denial of its plea to the jurisdiction in the wrongful death lawsuit filed against it by Appellee Bonnie Ledbetter, Individually and as Representative of the Estate of John Ledbetter, and Freddie Ledbetter, Callie Ledbetter, Amber Bogusch, Ashley Ledbetter, and John Ledbetter, Jr. (collectively, Ledbetter). The Department contends in one issue that the trial court erred by denying the Department's plea to the jurisdiction because there is no evidence that the use of tangible personal property proximately caused John Ledbetter's death. We affirm.

## II. Procedural History

Ledbetter filed this suit in June 2010. She alleges in her fifth amended petition that her son John Ledbetter (John) died while in the Department's custody and that the Department is liable for his death because the Department's employees used or misused a transport van, handcuffs, and restraints. More specifically, Ledbetter alleges that on June 27, 2008, John was not coherent and vomited in his cell. Department correctional officers transported John by van to another prison facility for evaluation and did not call for an ambulance so that John could be taken to a hospital. Prior to laying John on the backseat of the van, the officers placed him in handcuffs and belly and ankle cuffs with a chain running between his hands, belly chain, and ankles. Ledbetter alleges that, because of the restraints, John "could not move him self as needed to take care

4

of himself when vomiting." Ledbetter further alleges that "[w]hen John arrived at the Robertson Unit, the nurses immediately saw that John was not breathing and started CPR[,] but it was too late. The misuse of the restraints, which were placed on John by employees, agents and servants of [the Department] . . . [was] a direct and proximate cause of John's death." "John died because he aspirated vomit."

The Department filed its plea to the jurisdiction in September 2011, and the trial court conducted a hearing in February 2012. The appellate record does not contain a written response by Ledbetter, but we note that there are several witness statements attached to Ledbetter's fifth amended petition. The trial court granted the Department's plea to the jurisdiction in part as to Ledbetter's allegations concerning the use or misuse of the transport van but also denied the plea to the jurisdiction in part. As to the partial denial, the trial court's order states that "[t]he case will proceed under the Texas Tort Claims Act solely predicated upon the alleged use or misuse of restraints." This interlocutory appeal by the Department followed.[2]  *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West Supp. 2012).

### III.  Standard of Review

Whether the trial court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Natural Res. Conservation Comm'n v. IT-Davy*, 74

---

[2]Ledbetter has not appealed the trial court's partial grant of the Department's plea to the jurisdiction.

5

S.W.3d 849, 855 (Tex. 2002). A plea to the jurisdiction is a dilatory plea that challenges the trial court's subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). It is used to defeat a cause of action without regard to whether the claims asserted have merit. *Id.*

The plaintiff has the burden of alleging facts that affirmatively establish the trial court's subject-matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleadings liberally in favor of the plaintiff, look to the pleader's intent, and accept the pleadings' factual allegations as true. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). If, as in this case, a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties that is necessary to resolve the jurisdictional issues. *Id.* at 227; *Bland*, 34 S.W.3d at 555.

The plea to the jurisdiction standard generally mirrors that of a traditional motion for summary judgment. *Miranda*, 133 S.W.3d at 228; *see* Tex. R. Civ. P. 166a(c). The governmental unit is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction. *Miranda*, 133 S.W.3d at 228. Once the governmental unit meets its burden, the plaintiff is then required to show there is a disputed material fact regarding the jurisdictional issue. *Id.* We take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Wise Reg'l Health Sys. v. Brittain*, 268 S.W.3d 799, 805 (Tex. App.—Fort

6

Worth 2008, no pet.) (citing *Miranda*, 133 S.W.3d at 228). If the evidence creates a fact question regarding jurisdiction, the trial court must deny the plea to the jurisdiction and leave its resolution to the factfinder. *Miranda*, 133 S.W.3d at 227–28. But if the evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 228.

## IV. Sovereign Immunity

The Department asserts that it is entitled to sovereign immunity from suit. Unless waived by the State, sovereign immunity from suit defeats a trial court's subject-matter jurisdiction. *Id.* at 225–26. Relevant to this case, section 101.021(2) of the Tort Claims Act waives immunity only for personal injury and death "caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2) (West 2011). Conversely, the Tort Claims Act does not waive sovereign immunity if the State would not be liable to the claimant under Texas law if it were a private person. *Id.*; *see City of Fort Worth v. Robinson*, 300 S.W.3d 892, 897 (Tex. App.—Fort Worth 2009, no pet.). Thus, the Tort Claims Act creates a unique statutory scheme in which immunity from liability and immunity from suit are coextensive. *Miranda*, 133 S.W.3d at 224; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 101.021(2).

7

At issue in this case is causation. The Department argues that Ledbetter has not pleaded and offered evidence that the use of tangible personal property caused John's death. Ledbetter responds that John died as a result of the officers' use of restraints because "the application of the restraints onto an unconscious and vomiting John led directly to his inability to clear his airways and ultimately his death."

"Section 101.021(2) requires that for immunity to be waived, personal injury or death must be proximately caused by the condition or use of tangible property." *Dallas Cnty. Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.), *cert. denied*, 525 U.S. 1017 (1998). To satisfy this requirement, there must be "a nexus between the use of tangible property and the plaintiff's injuries." *Tex. Tech Univ. Health Scis. Ctr. v. Ward*, 280 S.W.3d 345, 352 (Tex. App.—Amarillo 2008, pet. denied) (citing *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542–43 (Tex. 2003)). Ledbetter's pleadings are clearly sufficient to allege that the use of the restraints caused John's death. Among other things, Ledbetter alleges that the "misuse of the restraints . . . were a direct and proximate cause of John's death," that the Department "[a]ffirmatively us[ed] . . . the restraining devices to restrain John Ledbetter while he was vomiting without a way to allow him to protect himself and without protecting him," and that "John died because he aspirated vomit." We thus focus on whether the Department's evidence negated causation as a matter of law and, if so, whether Ledbetter presented evidence that the alleged misuse of the

8

restraining devices caused John's death.  *See id.*; *see also Bossley*, 968 S.W.2d at 343; *Brittain*, 268 S.W.3d at 805.

## V. Plea to the Jurisdiction Evidence

The record before the trial court at the hearing on the Department's plea to the jurisdiction consisted of Ledbetter's fifth amended petition, the witness statements attached to Ledbetter's fifth amended petition, the Department's plea to the jurisdiction, and the autopsy report attached to the Department's plea. Because we assume the truth of the nonmovant's evidence when reviewing a plea to the jurisdiction, *Brittain*, 268 S.W.3d at 805, we summarize the evidence in the light most favorable to Ledbetter, the nonmovant.

Sergeant D. Pierce's written statement provides that an officer escorted John into the medical department at approximately 10 p.m. on June 27, 2008, because John had been "removing his clothes on several occasions and walking around the dayroom."  The nurse on duty said that nothing could be done for John until a psychological evaluation could be conducted the next morning, but John was moved to a segregated cell.  In ordering John to pack his belongings to be moved, Sergeant Pierce noted that John seemed confused.  At approximately 4 a.m. the next morning, Sergeant Pierce saw that John "had thrown up on the floor with a brown coffee type substance," was lying on his bunk, and was nonresponsive.  Sergeant Pierce wrote that John "was just lying there shaking and moving his arms and head around."  Sergeant Pierce then called to have John transported to the Robertson Unit for evaluation, and officers placed John

onto a gurney for the transport and temporarily took him to the medical department.

Sergeant Pierce also wrote the following in his witness statement:

> While in Medical, I had Officer Skeens remove [John's] shirt due to the liquids on it and he was placed in transport restraints. [John] was awake and breathing at this time[;] he was shaking and moving his head around. He was not talking or making any noises. . . . When [the transport van] arrived, I along with Officer Skeens assisted [John] into the side doors of the transport Van. I had control of [John]'s upper body and Officer Skeens had control of [John]'s legs and he was lifted from the gurney to the backseat of the transport Van. At this time I was inside the Van and placed [John] in a lying down position on his left side due to [his] not being able to sit up on his own and throwing up at this time. [John] was still moving his head and shaking at this time. The transport team left for the Robertson Unit with all three Officers in the front cab area due to space limitations with [John] laying down on the only seat in the middle section and the need to transport [him] in an urgent manner.

Officer J. Martinez wrote in his statement that he retrieved restraints after being notified that John would be transferred to Robertson Unit and that he and other officers "applied the transport restraints." According to Officer Martinez's statement, John was placed into the transport van "on his side to prevent choking due to his prior vomiting." The transport van departed at 4:20 a.m., arrived at the Robertson Unit at 4:22 a.m., and pulled up to the Robertson Unit Medical Department at approximately 4:25 a.m. Officer Martinez wrote that John was moaning and shaking upon arrival but that he was no longer moaning when the officers opened the van doors. During transport, John "had rolled himself in between the seat where he was lying on his side." Officer Martinez checked

10

John's pulse and "observed it to be very faint." Officer Martinez also helped move John to a gurney and watched as nurses began CPR.

Nurse R. Mayfield's written statement provides that John was "face down between [the] seat and cage" when she first saw him. Nurse Mayfield called the ambulance, and officers removed John from the van and placed him on a gurney. Nurse Mayfield wrote that John's "face and head was purple, pupils fixed and dilated."

Nurse G. Perales wrote in her statement that she heard officers say that John was not breathing and that she "jumped [onto the] gurney and started chest compression." Nurse Perales also wrote:

> Told my supervisor to get Ambubag from under gurney to give air. Airway clear. [Nurse] Mayfield, LVN pushing gurney down hallway toward ER Room. More Security arrived. Assisting with CPR. Airway suctioned out. O2 applied with Ambubag at 10 L/M. Patient not responding. Skin cold and purple. No pulse or respiration noted. Ambulance had been called. CPR continued. Paramedics arrived. MD called at HMC and given report told to stop CPR. CPR in progress X 30 minutes approx. Heart monitors showing no cardiac activity. Paramedics applied their heart monitors and nothing was seen. Hear[t] not responding. CPR was ordered by HMC Doctor to be discontinued. End of CPR rescue efforts.

Nurse C. Williamson's statement reflects that John was "lying face down between the seat and the cage" in the transport van when she first saw him. He was transferred from the van to the gurney by the officers, and someone called EMS. Nurse Williamson also wrote: "[John's] color was purple on head and face, pupils were fixed, above nipple line color was lightly red/purple and mottled." John had no pulse three minutes later, but nurses continued CPR until

11

the paramedics arrived. The paramedics assessed John's condition after they arrived and contacted Dr. Maloney who told them to stop CPR.[3]

The last written statement attached to Ledbetter's petition is by inmate Jesus Ezpinoza. Ezpinoza wrote that the officers were not trying to help John despite his requests for help and that they only offered him a cup of water. Ezpinoza further stated that the "officers finally got him some medical attention [when] he was drooling out green stuff from his mouth." Ezpinoza wrote that John was trembling when he initially walked into his cell but that his "bones were tr[e]mbling" when the officers carried him out to the gurney.

The Department's only evidence is the autopsy report. The listed findings include that John was "pronounced dead in infirmary following episode of disorientation, vomiting, and convulsions (by history)" and that John had severe atherosclerotic coronary artery disease, severe pulmonary edema and congestion, cardiomegaly, and arteriolonephrosclerosis. The medical examiner listed the causes of death as "congestive heart failure due to hypertensive and atherosclerotic cardiovascular disease" and chronic hepatitis. The autopsy report also stated that John's airways were "patent, containing no foreign objects or material."

---

[3]John was pronounced dead at 5:03 a.m. His hand restraints were removed at 7:02 a.m.

12

## VI. Analysis

The Department contends that the trial court lacks subject matter jurisdiction because Ledbetter failed to plead and prove that the use of restraints caused John's death and thereby failed to establish a waiver of sovereign immunity under the Tort Claims Act. Specifically, the Department argues that the autopsy report establishes that John died from heart failure and that Ledbetter has presented no evidence tending to show that John died of asphyxiation as a result of being restrained while vomiting.

We conclude that the evidence in the plea to the jurisdiction record does not conclusively disprove causation. Although the autopsy report does not include aspiration as an immediate or secondary cause of John's death, we are required to review the evidence in the light most favorable to Ledbetter, indulging every reasonable inference and resolving any doubts in her favor. *See Brittain*, 268 S.W.3d at 805. Considered in that light, evidence other than the autopsy report shows that John may have asphyxiated and that the restraints could have been a proximate cause of John's death. John was vomiting when placed into the transport van and was restrained while in the van. Sergeant Pierce wrote in his statement that John was placed "in a lying down position" in the transport van because he could not sit up on his own and was "throwing up at this time." Viewing the evidence in the light most favorable to Ledbetter, a reasonable inference may be drawn that John was vomiting after he was placed in the van. Although Officer Martinez's statement provides that John was placed on his side

13

to prevent choking, there is no evidence that John did not continue vomiting en route to the Robertson Unit as no one rode in the back of the van with John to observe his condition during the transport. In addition, all three nurses noted that, upon arrival at the Robertson Unit, John's coloring was purple. Nurse Perales wrote in her statement that she was called by Nurse Mayfield to help while the officers were removing John from the van. She heard them say, "He is not breathing." She then "jumped up gurney and started chest compression" and told her supervisor to give John air. She then wrote that John's airway was clear, all of this occurring as Nurse Perales was continuing CPR and as Nurse Mayfield was pushing the gurney toward the emergency room. John's airway was then suctioned.

Applying the appropriate standard of review, Nurse Perales's statements that John's airway was clear and was suctioned out do not conclusively negate the possibility that John's airway was obstructed when Nurse Perales began CPR upon John's arrival at the Robertson Unit. *See Miranda*, 133 S.W.3d at 228; *Brittain*, 268 S.W.3d at 805. The Department relies on the statement in the autopsy report that John's airway was open, clear, and "contain[ed] no foreign objects or material," but the suctioning of John's airway would explain the medical examiner's failure to find obstructions in John's airway when he performed the autopsy later that day. Thus, in the absence of affirmative evidence offered by the Department that John's physical symptoms upon arrival at the Robertson Unit were not consistent with asphyxiation, the evidence does

not conclusively disprove Ledbetter's theory that John asphyxiated on vomit as a result of being restrained in the transport van.

Applying the appropriate standard of review and thus reviewing the plea to the jurisdiction evidence in the light most favorable to Ledbetter, we hold that the evidence does not conclusively show that the Department's use of restraints was not a proximate cause of John's death. *See generally Brittain*, 268 S.W.3d at 808 ("The causation requirement in section 101.021(2) is one of proximate cause-not a heightened standard such as sole cause."). Although the evidence arguably preponderates against a conclusion that the restraints proximately caused John's death in that he was apparently suffering from a cardiac event prior to being restrained and was determined to have died as a result of congestive heart failure, the evidence does not conclusively negate the use of restraints as a proximate cause of John's death and is likewise conflicting as to whether the Department's use of restraints was, although not the sole cause, a proximate cause of John's death. The trial court therefore did not err by denying the Department's plea to the jurisdiction. We overrule the Department's sole issue.

## VII.  Conclusion

Having overruled the Department's sole issue, we affirm the trial court's order.


ANNE GARDNER
JUSTICE

PANEL:  GARDNER, MCCOY, and MEIER, JJ.

DELIVERED:  December 21, 2012

16