ACCEPTED
01-14-00767-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/5/2015 6:05:33 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-14-00767-CV

### In the Court of Appeals
### for the First Judicial District
### Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/5/2015 6:05:33 PM
CHRISTOPHER A. PRINE
Clerk

**SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT**

**Appellants,**

VS.

**U. T. PHYSICIANS**

**Appellee.**

On Appeal From the 164th Judicial District Court of Harris County, Texas
Trial Court Cause No. 2012-35806
The Honorable Alexandra Smoots-Hogan, Judge Presiding

## APPELLANTS' BRIEF ON THE MERITS

THE GOURRIER LAW FIRM, LLP
Joseph M. Gourrier
joseph@gourrierlaw.com
Texas State Bar No. 24007258
530 Lovett Boulevard, Suite B
Houston, Texas 77006
Telephone:  713-533-9077
Facsimile: 713-533-9376

*Attorney for Appellants Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir and Christopher McKnight, Individually and as Next Friend of Nayla McKnight*

## ORAL ARGUMENT REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

The following is a list of all parties to the trial court's order appealed from, and the names and addresses of all trial and appellate counsel:

1. Appellants-Plaintiffs are Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir and Christopher McKnight, Individually and as Next Friend of Nayla McKnight.

2. Trial and appellate counsel for Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir and Christopher McKnight, Individually and as Next Friend of Nayla McKnight is The Gourrier Law Firm, PLLC, Joseph M. Gourrier, 530 Lovett Boulevard, Suite B, Houston, Texas 77006-4021.

3. Appellee-Defendant is U T Physicians.

4. Trial and appellate counsel for Appellant-Defendant U T Physicians are Fulbright & Jaworski LLP, David R. Iler, Warren S. Huang, and Jaqualine P. McMillan, 1301 McKinney, Suite 5100, Houston, Texas 77010-3095.

5. Trial counsel for Appellant-Defendant U T Physicians are the Office of the Attorney General, Greg Abbott, Daniel T. Hodge, David C. Mattax, Kara L. Kennedy, and Jason Warner, Tort Litigation Division, MC-030, P.O. Box. 12548, Capitol Station, Austin, Texas 78711-2548.

6. Additional defendants in the underlying proceeding (but not parties to this appeal) are Angela Matthews, Leah Ann Gonski Marino f/k/a Leah Ann Gonski, Jaou-Chen-Huang, M.D. and Insperity PEO Services, L.P. f/k/a Administaff Companies II, L.P.

7. Trial counsel for Defendant Angela Matthews are Fulbright & Jaworski LLP, David R. Iler and Jaqualine P. McMillan, 1301 McKinney, Suite 5100, Houston, Texas 77010-3095 and the Office of the Attorney General, Greg Abbott, Daniel T. Hodge, David C. Mattax, Kara L. Kennedy, and Jason Warner, Tort Litigation Division,

MC-030, P.O. Box. 12548, Capitol Station, Austin, Texas 78711-2548.

8. Trial counsel for Defendant Leah Ann Gonski Marino f/k/a Leah Ann Gonski are Strawn Pickens LLP, John R. Strawn, Jr. and Victoria P. Skinner, Pennzoil Place, South Tower, 711 Louisiana, Suite 1850, Houston, Texas 77002.

9. Trial counsel for Defendant Jaou-Chen Huang, M.D. are Holm Bambace, LLP, Charles B. Holm and Kyle M. Smith, 1010 Lamar, Suite 1100, Houston, Texas 77002.

10. Trial counsel for Defendant Insperity PEO Services, L.P. f/k/a Administaff Companies II, L.P. are Shepherd, Scott, Clawater, & Houston, L.L.P, David J. McTaggart, 2777 Allen Parkway, 7th Floor, Houston, Texas 77019.

# TABLE OF CONTENTS

**PAGE**

IDENTITY OF PARTIES AND COUNSEL ........................................................ ii

TABLE OF CONTENTS.................................................................................iv

INDEX OF AUTHORITIES..........................................................................vi

STATEMENT OF THE CASE.........................................................................1

ISSUE PRESENTED......................................................................................3

STATEMENT OF FACTS ..............................................................................3

SUMMARY OF ARGUMENT .......................................................................5

ARGUMENT .................................................................................................6

I.      Standard of Review .................................................................................6

II.     UT Physicians Failed to Prove that it is a Governmental Unit and the
        Appellants Created Fact Issues Regarding the Court's Jurisdiction ...............7

        A.      UT Physicians is a Private Non-Profit Corporation Controlled by its
                Elected Board of Directors.................................................................7

        B.      The Legislature Specifically Identified the Entities Under the Control
                of the UT System Board of Regents in the Statutes............................9

        C.      The UT System Board of Regents Does Not Recognize UT Physicians
                as an Entity Subject to Its Control......................................................11

        D.      UT Physicians is an Independent Contractor to UTHSCH with a
                Written Agreement Controlling their Relationship............................16

        E.      UT Physicians is an Independent Contractor as a Matter of Law
                Because it is an "Auxiliary Enterprise." ...........................................20

III.    The Trial Court Erred in Granting the Plea to the Jurisdiction Because the Lenoirs Alleged that Shana Lenoir's Death Was Proximately Caused By An Employee's Use of Tangible Physical Property..............................................27

CONCLUSION ..........................................................................................................29

CERTIFICATE OF COMPLIANCE........................................................................30

CERTIFICATE OF SERVICE ................................................................................31

# INDEX OF AUTHORITIES

PAGE(S)

**CASES**

*Alamo Workforce Dev., Inc. v. Vann*,
21 S.W.3d 428 (Tex. App.—San Antonio 2000, no pet.) .............................19

*Angleton Danbury Hosp. Dist. v. Chavana*,
120 S.W.3d 424 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ...............28

*Bay, Inc. v. Ramos*,
139 S.W.3d 322 (Tex. App.—San Antonio 2004, pet. denied) ....................18

*City of Alton v. Sharyland Water Sup.*,
145 S.W.3d 673 (Tex. App.—Corpus Christi 2004, no pet)........................16

*City of Waco v. Kirwan*,
298 SW 3d 618 (Tex. 2009) ............................................................6

*Dallas Merchant's v. City of Dallas*,
852 S.W. 2d 489 (Tex. 1993) ........................................................10

*Gonzalez v. Heard, Goggan, Blair & Williams*,
923 S.W.2d 764 (Tex.App.—Corpus Christi 1996, writ denied).................16

*Indus. Indem. Exch. v. Southard*,
138 Tex. 531, 160 S.W.2d 905 (1942) ............................................16

*KDF v. Rex*,
878 S.W. 2d 589 (Tex. 1994) ...................................................11, 19

*Texas A&M Univ. v. Bishop*,
156 S.W.3d 580 (Tex. 2005) ........................................................16

*Tex. Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217, 226-27 (Tex.2004)..............................................6, 27

*Texas Boll Weevil Eradication Found. v. Lewellen*,
952 S.W.2d 454, 470-72 (Tex. 1997).................................................19

*Univ. of Health of Science Ctr. v. Stevens*,
      330 S.W.3d 335(Tex. App.—San Antonio 2010, no pet.) ...........................28

*Wise Reg'l Health Sys. v. Brittain*,
      268 SW 3d 799 (Tex.App.—Ft. Worth 2008, no pet.)..................................28

**STATUTES & RULES**

TEX. BUS. ORG. CODE §22.001, *et seq* ......................................................................8

TEX. CIV. PRAC. & REM.CODE §§ 101.001-.109 ......................................................27

TEX. CIV. PRAC. & REM. CODE §101.001(2).......................................................17, 26

TEX. CIV. PRAC. & REM. CODE §101.001(3)..............................................................7

TEX. CIV. PRAC. & REM. CODE §101.021 (2)......................................................27, 28

TEX. EDUC. CODE §51.009(b) ................................................................................24

TEX. EDUC. CODE §65.02 ....................................................................................7, 9

TEX. EDUC. CODE §73.001 .................................................................................7, 10

TEX. EDUC. CODE §73.057 ...............................................................................11, 18

TEX. GOV'T CODE §2252.061 (1) ............................................................................21

# STATEMENT OF THE CASE[1]

This is a health care liability case. On June 20, 2012, Appellants-Plaintiffs Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir, and Christopher McKnight, Individually and as Next Friend of Nayla McKnight (collectively, "the Lenoirs"), filed suit against Defendant Leah Ann Gonski Marino f/k/a Leah Ann Gonski ("Gonski"), Defendant Jaou-Chen Huang, M.D. ("Huang"), Appellee-Defendant UT Physicians ("UTP"), and its employee. Defendant Angela Matthews, pursuant to the Texas Wrongful Death Act and Texas Survival Act. CR___; *see also* CR ___. The Lenoirs alleged that the Defendants' negligence in treating Shana Lenoir's ("Ms. Lenoir") twin pregnancy proximately caused her death. CR ___. The Lenoirs alleged that UTP was vicariously liable for the negligent conduct of its employee, Angela Matthews, pursuant to the doctrine of respondeat superior. CR ___. On January 25, 2013, the Lenoirs filed their First Amended Original Petition. CR ___.

On January 31, 2014, UTP filed a plea to the jurisdiction and motion to dismiss. CR 4-56. UTP alleged that it was a governmental unit entitled to sovereign immunity and that Plaintiffs had not pled a waiver of immunity under the Texas Tort Claims Act, therefore the trial court lacked subject matter jurisdiction.

---

[1] CR ___" refers to the Clerk's Record. "RR ___" refers to the Reporter's Record. "App. Tab ___" refers to the Appendix attached.

1

The Lenoirs filed a response to UTP's motion on February 12, 2014. CR 71-106. On February 14, 2014, UTP filed a reply in support of its plea and motion to dismiss. CR 109-117. On February 24, 2014, the Lenoirs filed their Second Amended Original Petition. CR 116-130. UTP filed supplemental evidence on April 11, 2014. CR 131-300. On July 10, 2014, the Lenoirs filed a supplemental response in opposition to UTP's plea and motion to dismiss. CR 301-397. UTP filed a reply to the Lenoirs' supplemental response on July 15, 2014. CR 398-403.

On July 11, 2014, the trial court held an oral hearing on UTP's plea to the jurisdiction and motion to dismiss. RR 1-23. On August 14, 2014, the trial court granted UTP's plea to the jurisdiction and motion to dismiss. CR 404-405. The Lenoirs timely filed their notice of appeal on September 12, 2014. CR 412-419.

This Court previously reversed the trial court's order denying Angela Matthews' motion to dismiss, in Appeal No. 01-13-1082-CV; *Angela Matthews v. Shirley Lenoir, et al.,* and the case is pending before the Texas Supreme Court on a petition for review. This Court also reversed the trial court's order granting Gonski's motion to dismiss and affirmed the order granting Huang's motion to dismiss, in Appeal No. 01-13- 1034-CV; *Shirley Lenoir, et al., v. Leah Anne Gonski Marino f/k/a Leah Ann Gonski and Jaou Chen Huang, M.D.* This case is pending before the Court on a motion for rehearing.

## ISSUES PRESENTED

Issue No. 1        Did the trial court err in granting Appellee-Defendant UT Physicians' Plea to the Jurisdiction and Motion to Dismiss?

Issue No. 2        Did the trial court err in determining that UT Physicians is a governmental unit entitled to raise sovereign immunity?

Issue No. 3        Did the trial court err in determining that Plaintiffs did not plead use of tangible physical property to constitute a waiver under the TTCA?

## STATEMENT OF FACTS

On April 8, 2010, Ms. Lenoir presented to the U.T. Physicians Clinic for medical treatment due to her advanced pregnancy with twins. CR 120. Ms. Lenoir was seen by Gonski, who was a second-year medical resident at the time with a limited physician-in-training-permit. CR 120-121.

Gonski obtained a medical history from Ms. Lenoir, which included information regarding Ms. Lenoir's prior preterm delivery of twins at 5-1/2 months in which one twin did not survive and the other twin was in the NICU for over four months. *Id.* In the "Problems" section of the medical record, Dr. Gonski noted "Twins" and "PTL" (for preterm labor) and commented that "Progesterone weekly started." *Id.* In the written physician's orders, Dr. Gonski further noted "Progesterone shot IM weekly" and signed her name. *Id.*

Gonski was not physically supervised by a licensed physician when she saw Ms. Lenoir or when she ordered the injection. CR 122-123. A 250 mg injection of

3

progesterone was administered to Ms. Lenoir by Nurse Matthews, a licensed vocational nurse. CR 121. Later that night, Ms. Lenoir experienced difficulty breathing and collapsed. *Id*. Ms. Lenoir was rushed to the emergency room but was pronounced dead upon arrival, along with her two unborn children. *Id*. On autopsy, she was determined to be between 32 – 35 weeks pregnant. *Id*.

The progesterone injection given to Ms. Lenoir was medically unnecessary, investigational and contraindicated in Ms. Lenoir because of her twin pregnancy. CR 123-124. It is also considered to be an off-label use of the drug because it had not been approved by the FDA to prevent pre-term labor. *Id*.

On June 20, 2012, the Lenoirs filed their original petition asserting health care liability claims against the Defendants based on their negligence in treating Ms. Lenoir. CR____. On January 25, 2013, the Lenoirs filed a first amended petition. CR ____. On February 24, 2014, the Lenoirs filed a second amended petition. CR 118-130. In each of their petitions, the Lenoirs alleged that UT Physicians was vicariously liable for the negligence of its employee, Angela Matthews, in administering a progesterone injection to Shana Lenoir that was medically unnecessary and contraindicated which proximately caused her death.

On July 11, 2014, the trial court held an oral hearing on UT Physicians' plea to the jurisdiction and motion to dismiss. RR 1-23. On August 14, 2014, the trial

4

court granted UTP's motion. CR 404-405. The Lenoirs timely filed their notice of appeal on September 12, 2014. CR 412-419.

## SUMMARY OF ARGUMENT

This Court should overrule the trial court's August 14, 2014 order granting Appellee UT Physicians' plea to the jurisdiction and motion to dismiss because the trial court erred in finding that: (1) UT Physicians, a private nonprofit corporation, is a governmental unit subject to the control of The University of Texas Board of Regents such that it may claim sovereign immunity, (2) that UT Physicians is not an independent contractor, and (3) that the Appellants did not allege Shana Lenoir's death was proximately caused by use of tangible physical property by an alleged governmental employee to constitute a waiver under the TTCA, even though they alleged that her death was caused by Nurse Matthews' administration of a progesterone injection. At the very least, fact issues exist regarding the trial court's jurisdiction that must be decided by a jury.

For these reasons, the Lenoirs respectfully request that this Court: (1) overrule the trial court's August 14, 2014 order granting Appellee UT Physicians' plea to the jurisdiction and motion to dismiss, and (2) remand this case to trial court for further proceedings and awarding the Lenoirs' their costs.

## ARGUMENT

**I.      Standard of Review**

5

A plea to the jurisdiction seeks to dismiss a case for want of jurisdiction. *City of Waco v. Kirwan*, 298 SW 3d 618, 621-22 (Tex. 2009); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex.2004). When reviewing a ruling on a plea, the court first looks to the pleadings to determine if jurisdiction is proper, construing them liberally in favor of the plaintiffs and looking to the pleader's intent and accept as true the factual allegations in the pleadings. *Id*. at 226. The allegations found in the pleadings may either affirmatively demonstrate or negate the court's jurisdiction. *Id*. at 226-27. If the pleadings do neither, it is an issue of pleading sufficiency and the plaintiff should be given an opportunity to amend the pleadings. *Id*. "However, if a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Id*. at 227. A plea should not be granted if a fact issue is presented as to the court's jurisdiction. *Id*. at 227-28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id*. at 228. In considering this evidence, the court must "take as true all evidence favorable to the nonmovant" and "indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Id*.

## II. UT Physicians Failed to Prove that it is a Governmental Unit and the Appellants Created Fact Issues Regarding the Court's Jurisdiction.

6

As the movant on a plea to the jurisdiction, Appellee UT Physicians ("UTP") had the burden of establishing that it is a governmental unit entitled to raise sovereign immunity.

In the trial court, UTP argued that it is a governmental unit because its creation was authorized by the UT System Board of Regents. Defendant UTP's argument that it is governmental unit because it is was created by—and therefore subject to the control of the UT System Board of Regents—fails because it is not supported by either the statutes, the caselaw or the evidence. Further, Plaintiffs raised a fact issues as to: (1) whether UTP is subject to the control of the UT System Board of Regents and (2) whether UTP is an independent contractor to UTHSCH pursuant to a written Management Agreement, that must be decided by a jury which required denial of the plea to the jurisdiction. The trial court erred in granting UTP's plea to the jurisdiction and must be reversed.

### A. UT Physicians is a Private Non-Profit Corporation Controlled by its Elected Board of Directors.

It is true that UTHSCH is a "governmental unit" under the TTCA, TEX. CIV. PRAC. & REM. CODE §101.001(3), because it is part of The University of Texas System. *See*, TEX. EDUC. CODE §65.02 and §73.001. However, there is no evidence that UT Physicians is a governmental unit entitled to raise sovereign immunity.

7

In spite of its official sounding name, UT Physicians (formerly University Care Plus, formerly Uni Care Plus) is simply a non-profit corporation formed pursuant to the Texas Non-Profit Corporation Act. *See*, TEX. BUS. ORG. CODE §22.001, *et seq*. UT Physicians was incorporated on September 30, 1994, under the name Uni Care Plus. *See*, *Articles of Incorporation*, CR 80-85. Uni Care Plus changed its name to University Care Plus, on April 13, 1995. *See*, *Amendment to Articles of Incorporation*, CR 86. Finally, University Care Plus changed its name to UT Physicians, on September 22, 2003. *See*, *Amendment to Articles of Incorporation*, CR 87. According to its bylaws, UT Physicians is governed by a Board of Directors elected by the members of the corporation. CR 62-63.

UT Physicians is a corporate entity that operates an outpatient facility where UTHSCH faculty members practice medicine because the medical school cannot operate a teaching hospital using state funds. UT Physicians entered into a management agreement with UTHSCH to administer the business operations of the Medical Service, Research, and Development Plan (MSRDP), including but not limited to, strategic development, marketing, billing for and collection of professional fees, contracting for professional services, clinic operations, credentialing, and managed care operations.[2] CR 88-95. The UT System Board of

---

[2] UT Physicians is paid a "management fee" for the use of its medical care facilities out of the MSRDP. CR 91 at ¶3.1, ("Amount of Fee.").

Regents authorized the UTHSCH contract with UT Physicians by authorizing the President to contract with an entity to administer the business operations of the MSRDP Plan. CR ___ at ¶7.4.1.

**B.     The Legislature Specifically Identified the Entities Under the Control of the UT System Board of Regents in the Statutes.**

Contrary to its assertion that "U.T. Physicians derives its status and authority from state law", UTP's argument that it is a governmental unit with sovereign immunity because its creation was authorized by the UT System directly conflicts with the plain language used by the Legislature in creating the UT System.

In TEX. EDUC. CODE 65.02 (a), the Legislature created the UT System and identified the entities which composed the organization.[3] In TEX. EDUC. CODE 65.02 (b), the Legislature expressly reserved for itself the power to add entities to the governance, control, jurisdiction or management of the UT System stating:

> (b)  The University of Texas System shall also be composed of such other institutions and entities as from time to time may be assigned by specific legislative act to the governance, control, jurisdiction, or management of The University of Texas System.

---

[3] TEX. EDUC. CODE §65.02.  ORGANIZATION.  (a)  The University of Texas System is composed of the following institutions and entities:
\*\*\*
(9)  The University of Texas Health Science Center at Houston, including:
    (A)  The University of Texas Medical School at Houston;
    (B)  The University of Texas Dental Branch at Houston;
    (C)  The University of Texas Graduate School of Biomedical Sciences at Houston;
    (D)  The University of Texas School of Health Information Sciences at Houston;
    (E)  The University of Texas School of Public Health at Houston;
    (F)  The University of Texas Speech and Hearing Institute at Houston; and
    (G)  The University of Texas School of Nursing at Houston;

Similarly, in TEX. EDUC. CODE §73.001, the Legislature specifically identified the entities which comprise The University of Texas at Houston, which are under the management and control of the board of regents of The University of Texas System, to include "The University of Texas Medical School at Houston" and "other institutions and activities assigned to it from time to time." [4]

By expressly reserving for itself the power to add entities to the control of the UT System, the Legislature has left no authority for the UT System to do so. *See, Dallas Merchant's v. City of Dallas*, 852 S.W. 2d 489, 493, n. 7 (Tex. 1993) (discussing the doctrine of *expressio unius est exclusio alterius*).

Therefore, UTP's claim that it is a governmental unit with sovereign immunity based solely on its alleged creation by the UT System is refuted by the plain and unambiguous language of the statutes. These statutes also refute UTP's contention that it is a wholly owned subsidiary of UTHSCH because the Legislature has not authorized such a relationship and certainly has not extended the State's sovereign immunity to UTP.

---

[4] TEX. EDUC. CODE §73.001. COMPOSITION. The University of Texas at Houston is composed of the following component institutions under the management and control of the board of regents of The University of Texas System:
(1)  The University of Texas Medical School at Houston;
(2)  The University of Texas Dental Branch at Houston;
(3)  The University of Texas M. D. Anderson Cancer Center;
(4)  The University of Texas Graduate School of Biomedical Sciences at Houston;
(5)  The University of Texas School of Public Health at Houston;
(6)  The University of Texas School of Nursing at Houston;  and
(7)  other institutions and activities assigned to it from time to time.

Consistent with the Legislature's intent that only it had the authority to add entities to the UT System, the Legislature did not provide any funding for a teaching hospital for UTHSCH. In TEX. EDUC. CODE §73.057, the Legislature mandated that no state funds would ever be used for the "construction, maintenance, or operation of a teaching hospital" for The University of Texas Medical School at Houston.

> TEX. EDUC. CODE §73.057 TEACHING HOSPITAL. A complete teaching hospital for the school shall be furnished at no cost or expense to the state, and the state shall never contribute any funds for the <u>construction, maintenance, or operation of a teaching hospital for the school</u>. (underlining added)

Thus, no state funds can be used to pay for the operation of the UTP facility where the Appellants' decedent, Shana Lenoir, received the medical treatment that caused her death and where UTP alleges that residents, like Defendant Leah Ann Gonski, are taught or to pay the salaries of the UTHSCH faculty members, like Jaou-Chen Huang, who provide medical care at the UTP facility.

## C. The UT System Board of Regents Does Not Recognize UT Physicians as an Entity Subject to Its Control.

The Texas Supreme Court has held that a sovereign cannot extend sovereign immunity through private contracts, like the Management Agreement between UTHSCH and UT Physicians. *See, KDF v. Rex*, 878 SW 2d 589, 597 (Tex. 1994) ("While sovereign immunity protects the activities of government entities, no sovereign is entitled to extend that protection *ad infinitum* through nothing more

11

than private contracts. Pacholder is not entitled to sovereign immunity protection unless it can demonstrate its actions were actions of the Kansas government, executed subject to the control of KPERS.").

Consequently, UTP has to prove that it is subject to the control of the UT System Board of Regents to take advantage of the UT System's sovereign immunity. Recognizing this burden, UTP claims that the UT System Board of Regents authorized its creation and that it is included in a financial statement that is submitted to the UT System Board of Regents.

None of the information submitted by UTP establishes that it is subject to the control of the UT System Board of Regents—indeed, the statutes referenced above reject such a contention. Moreover, the UT System Board of Regents does not recognize UTP as an entity that is subject to its control. The UT System Board of Regents has adopted various rules and regulations which govern its member institutions, including one directed at nonprofit corporations like UTP.

According to The University of Texas System Rules and Regulations of the Board of Regents, Rule 60305 entitled "External Nonprofit Corporations":

> **The Board of Regents recognizes that there are legally incorporated nonprofit organizations (most having the word "foundation" in their charter) whose sole purpose is to benefit The University of Texas System, the institutions, or teaching,**

12

**research, and other activities within those institutions. <u>These organizations are administered by boards of directors independent from the control and supervision of the Board of Regents.</u>**

*See, The University of Texas System Rules and Regulations of the Board of Regents, Rule 60305 "External Nonprofit Corporations"*, CR 322-323. Rule 60305 conclusively negates any control or supervision by the UT System Board of Regents over UT Physicians, as such, it is not a governmental unit entitled to assert sovereign immunity.

Here, Rule 60305 applies to Defendant as an external nonprofit corporation. Defendant UT Physicians attached its corporate bylaws which conclusively establish that is was created to benefit UTHSCH and its teaching, research and healthcare mission. *See, UT Physicians' Bylaws at ¶1.2*, CR 60. Defendant UTP also attached minutes from a meeting of the UT System Board of Regents and claims that "U.T. Physicians is created for the benefit of UTHSCH." *See, Defendant's Reply*, CR 111.

Further, Defendant UTP's bylaws establish that it is controlled by a Board of Directors who are not selected by the UT System Board of Regents. *See, UT Physicians' By-laws*, CR 62. Further, Plaintiffs took the Deposition of Brent King, who was formerly on the Board of Directors for Defendant UTP and was an ex-officio member of the Board of Directors at the time of his deposition. *See,*

13

*Deposition of Brent King*, CR 324-365.   Dr. King testified that he was not

appointed to the UTP Board of Directors by the UT System Board of Regents.

12

Q.  Let me see if I can help you.  Are you on a committee with Kevin Dillon, Dr. Wolinsky and a Richard Andrassy dealing with the practice plan?
A.  I am -- it depends what committee you're talking about.  Do you have a name for that committee?
Q.  It doesn't have a name for the committee.
A.  **There was a committee that I was a member of, but I am now an ex-officio of that committee. I'm no longer in the committee.**
Q.  **What committee was that?**
A.  **It was the board of directors for**

13

**U.T. Physicians.**
Q.  **So you are currently an ex-officio member of the board of directors for U.T. Physicians; is that correct?**
A.  **That's correct.**
Q.  **But you were previously a member of the board of directors?**
A.  **I was for some time a member of the board of directors, yes.**
Q.  **How long were you a member of the board of directors for U.T. Physicians?**
A.  I don't recall.

***

85

Q.  **And you serve -- or you used to serve on the board of U.T. Physicians; is that correct?**
A.  **That is correct.**
Q.  **Were you appointed or approved to that position by the board of regents for the University of Texas System?**
A.  **Not that I'm aware of.**

14

***

**86**

**Q. Do you know what external corporations are?**

**A. No.**

**Q. Do you know if the board of regents for the University of Texas System has a rule dealing with external corporations?**

**A. I do not.**

Further, Dr. King refutes UTP's contention that it is a subsidiary corporation of UTHSCH, instead, Dr. King asserts that it is a "medical services organization" that provides administrative services.

73

**Q. Do you know if the Foundation provides any compensation to residents for providing medical care to patients while serving on the medical staff at U.T. Physicians?**

MS. MCKINLEY: Objection, form.

**A. Serving on the medical staff at U.T. Physicians. As far as I'm aware, Mr. Gourrier, U.T. Physicians doesn't really have a medical staff. It's a medical services organization.**

***

74

**Q. What is a medical services organization?**

**A. They are an organization that provides administrative services to physician practices. So they're engaged in contract negotiations. They, in some cases, might help to manage the non-professional staff in an office or set up a call center.**

**Q. Where does your understanding of U.T. Physicians' operations come from?**

**A. From my experience with the medical school and as a board member at U.T. Physicians.**

This evidence establishes that UT Physicians is an independent contractor to UTHSCH because it is not controlled by UT System Board of Regents. The trial court erred in determining that UTP is entitled to take advantage of UTHSCH's sovereign immunity as an independent contractor and this Court should reverse.

**D.     UT Physicians is an Independent Contractor to UTHSCH with a Written Agreement Controlling their Relationship.**

The Appellants provided evidence to establish that UT Physicians is an independent contractor to UTHSCH. *See, Texas A&M Univ. v. Bishop*, 156 S.W.3d 580, 584-85 (Tex. 2005) quoting *Indus. Indem. Exch. v. Southard*, 138 Tex. 531, 160 S.W.2d 905, 906 (1942). In *Bishop*, the Texas Supreme Court stated:

> There are several factors to consider in determining whether or not a worker is an independent contractor:
>
> (1) The independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job.

*Id*. at 584.85.

UT Physicians is not entitled to assert sovereign immunity as an independent contractor to UTHSCH. *See*, *City of Alton v. Sharyland Water Sup*., 145 S.W.3d 673, 682 (Tex.App.—Corpus Christi 2004, no pet.); *Gonzalez v. Heard, Goggan, Blair & Williams*, 923 S.W.2d 764, 766 (Tex.App.—Corpus Christi 1996, writ

16

denied). Indeed, the statute that provides sovereign immunity to various employees and agents of the government specifically excludes independent contractors and their employees. *See*, TEX. CIV. PRAC. & REM. CODE §101.001(2). According to TEX. CIV. PRAC. & REM. CODE §101.001(2):

> "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Since Angela Matthews was the employee of UT Physicians, an independent contractor, and UTHSCH did not have the right to control the details of her work under the plain language of the Management Agreement, UT Physicians cannot assert UTHSCH's sovereign immunity based on her negligent conduct. *Id.*

UT Physicians entered into an agreement with UTHSCH to administer certain business operations, including but not limited to, strategic development, marketing, billing for and collection of professional fees, contracting for professional services, clinic operations, credentialing, and managed care operations. *See, "Management Agreement" between The University of Texas Health Science Center at Houston and UT Physicians*, at ¶¶1.1 – 1.6. CR 88-90.

UT Physicians is required by the Management Agreement to provide offices, furnishings and equipment, personnel (including nursing personnel), supplies, and

17

management services to UTHSCH.[5] *Id.* More importantly for purposes of UT Physicians' plea to the jurisdiction and motion to dismiss under the TTCA, the Management Agreement required UT Physicians to provide nursing staff for use by UTHSCH physicians, but the nursing staff, including Defendant Angela Matthews, remained under UT Physicians' direction and control. *See, Management Agreement*, at ¶1.4 (B) ("Nursing and Other Clinical Personnel."). CR 89. UT Physicians is paid a "management fee" for the use of its medical care facilities and services rendered. *Id.*at ¶3.1, ("Amount of Fee."). CR 91.

In its plea, UT Physicians argued that the Board of Regents of the University of Texas authorized its creation. Even if true, such action would not transform a private nonprofit corporation, like UT Physicians who is acting as an independent contractor to UTHSCH, into a "governmental unit" under the TTCA. *See, e.g., Bay, Inc. v. Ramos*, 139 S.W.3d 322, 328 (Tex.App.—San Antonio 2004, pet. denied) ("Merely because Bay engaged in an activity that is highly regulated by a state agency does not necessarily place it under that agency's control and direction for purposes of the Texas Tort Claims Act."). Further, governmental agencies are restricted from delegating governmental functions to private entities without

---

[5] The Legislature has not authorized any state funds for the operation of a teaching hospital for The University of Texas Medical School at Houston. *See*, TEX. EDUC. CODE §73.057

legislative or constitutional authority. *See, Texas Boll Weevil Eradication Found. v. Lewellen*, 952 S.W.2d 454, 470-72 (Tex. 1997).

Courts should be "careful not to extend the blanket of sovereign immunity to every entity which at first blush exhibits the characteristics of a governmental unit." *Alamo Workforce Dev., Inc. v. Vann*, 21 S.W.3d 428, 433 (Tex.App.—San Antonio 2000, no pet.). "While sovereign immunity protects the activities of government entities, no sovereign is entitled to extend that protection *ad infinitum* through nothing more than private contracts. Pacholder is not entitled to sovereign immunity protection unless it can demonstrate its actions were actions of the Kansas government, executed subject to the control of KPERS." *KDF v. Rex*, 878 SW 2d 589, 597 (Tex. 1994).

UT Physicians is attempting just such an *ad infinitum* expansion of UTHSCH's sovereign immunity, first to it, then to Insperity PEO, Matthews' co-employer, then to Defendant Angela Matthews, by nothing more than private contracts. Here, these private contracts include: (1) the Management Agreement between UTHSCH and UT Physicians, [CR 88-95], (2) the "Client Services Agreement" between UT Physicians and Insperity PEO (formerly Administaff), [CR 96-105], and (3) the "Employment Agreement" between Administaff and Defendant Angela Matthews. [CR 106-108].

19

The Legislature has determined that independent contractors and their employees are not entitled to sovereign immunity, therefore, UT Physicians cannot expand UTHSCH's immunity through private contracts.

In conclusion, Defendant UTP is an independent contractor to UTHSCH hired to collect professional income generated from patient care by UTHSCH faculty members at its facilities. Pursuant to its Management Agreement with UTHSCH, UTP is responsible for providing and managing the nursing staff who work at its facility. As such, Defendant UTP is not a governmental unit entitled to raise sovereign immunity and its plea to the jurisdiction must be denied.

The trial court erred in granting UT Physicians' plea to the jurisdiction and motion to dismiss because it failed to meet its burden of proof because no evidence was offered to establish that it is a governmental unit. Alternatively, the Appellants raised fact issues regarding its status as an independent contractor that must be resolved by a jury and the trial court erred in granting UTP's plea to the jurisdiction.

**E.    UT Physicians is an Independent Contractor as a Matter of Law Because it is an "Auxiliary Enterprise."**

The Appellants also presented evidence that UT Physicians was an independent contractor at the time of the incident because it is a statutory "auxiliary enterprise." CR ___. If UTP was an independent contractor or a fact

20

issue exists regarding its status, then the trial court erred in granting UTP's motion to dismiss.

Faculty members at UTHSCH practice medicine in a Medical Service, Research, and Development Plan (MSRDP) where the income from their professional services is billed and collected by UT Physicians. CR ___. Pursuant to their Management Agreement, the professional service fees are sent by UT Physicians to UTHSCH and deposited into the MSRDP trust fund which is then used to pay various expenses, including UTHSCH faculty salaries and a fee to UT Physicians for the use of its medical facilities by UTHSCH faculty members. CR ____ at G.2; CR ____ at Article I "Purpose".

Under Texas law, the medical services performed at UT Physicians by UTHSCH faculty members is an "auxiliary enterprise" and UTP is a "contractor" because it operates or performs a service of the "auxiliary enterprise." *See*, TEX. GOV'T CODE §2252.061 (1) **("auxiliary enterprise" means a business activity that is conducted at a state agency, provides a service to the agency, and is not paid for with appropriated money**); TEX. GOV'T CODE §2252.061 (2) (**"Contractor" means an individual, association, corporation, or other business entity that operates an auxiliary enterprise or performs a service of the auxiliary enterprise**).

21

By statute, auxiliary enterprises cannot be supported with money appropriated by the Legislature. Thus, the salaries of faculty members who practice medicine at UT Physicians cannot be paid using state funds because this business activity is an "auxiliary enterprise." Consequently, faculty salaries for this auxiliary enterprise are paid out of the MSRDP fund, so that it is self-supporting to avoid violating Texas law. CR ___ at ¶7.5 "Authorized Professional Business Expenditures," and CR ___ at Appendix A-1, #8, ("Base Salary, Supplemental Compensation, and Incentive Compensation.").

Plaintiffs also took the deposition of Kevin Dillon, Kevin Dillon, UTHSCH's Senior Executive Vice-President, Chief Operating Officer and Chief Financial Officer and Defendant UT Physicians' Treasurer. *See, Deposition of Kevin Dillon*, CR 366-397. Mr. Dillon executed the Management Agreement and its amendments between UTHSCH and UTP. CR 93; 94; 95. Mr. Dillon also discusses the financial relationship between UTHSCH and UTP arising from the Management Agreement and the fact that UTP is required to transfer patient care money generated by faculty physicians working at UTP as part of an auxiliary enterprise to UTHSCH. In 2010, this money exceeded $608 million. CR 311-320.

The funds that UTP collects on behalf of physicians who practice there are not transferred to UTHSCH as a matter of right, but pursuant to a written contract. If UTHSCH and UTP were all the same entity subject to control from the UT

22

System Board of Regents, then UTP would be obligated to turn over funds to UTHSCH and there would be no need for a contractual provision requiring such a transfer. CR 94; 95.

A review of the UT System Board of Regents' Rule UTS 101 confirms that the medical practice funded by the MSRDP is an "auxiliary enterprise." CR ___. Rule UTS 101 defines "auxiliary enterprises" as:

> **Auxiliary Enterprises** - **a program, activity, or fund source used to furnish facilities, goods, or services to** students, **patients**, faculty, staff, or, incidentally, to the general public. An auxiliary enterprise typically charges a fee directly related to, although not necessarily equal to, the cost of the facilities, goods, or services. **The distinguishing characteristic of an auxiliary enterprise is that it is managed on an essentially self-supporting basis.** Examples are student housing, food services, college stores, parking, and student health services. **Hospitals, although they may serve students, faculty, or staff, are classified separately because of their financial significance**.

Thus, the governing board of the UT System recognizes that the MSRDP fund used to provide medical services to patients and a place for UTHSCH to practice medicine (at the UT Physicians facility) is an "auxiliary enterprise." However, the UT System Board of Regents does not call the medical services provided at hospitals by faculty members an "auxiliary enterprise" because they generate a large amount of money.

Instead, the Board euphemistically named the auxiliary enterprise involving faculty-provided medical services, "Clinical Enterprise Business Operations." CR

23

___.  The Board further identifies the MSRDP fund as an auxiliary enterprise by identifying the service it provides to UTHSCH.  CR ___ at ¶2, Sec. 4.

According to Kevin Dillon, UTHSCH's Senior Executive Vice-President, Chief Operating Officer and Chief Financial Officer, UTHSCH follows the accounting guidelines promulgated by NACUBO, as required by statute.  CR ____ at pp.106-07.  But, NACUBO does not call the auxiliary enterprise involving faculty-provided medical services "Clinical Enterprise Business Operations." NACUBO has identified the funds generated through such patient care activities, which are related to the higher education mission, as "Auxiliary Enterprise-Other." CR ___.

Instead of calling the institutional funds generated from these large auxiliary enterprises "Auxiliary Enterprises-Other", in accordance with NACUBO guidelines and TEX. EDUC. CODE §51.009(b), UTHSCH calls these funds "designated funds."  CR ___.

104

Q.  Is the MSRDP managed on a self-supporting basis?
A.  When you say "self supporting," if you

105

would just make -- if you would amplify that a little bit, it may help me answer your question.
Q.  Does it use state-appropriated dollars?
A.  The MSRDP -- the -- the difficulty with that is, where by definition MSRDP is a designated fund.  It's not an education and general fund.  So my answer is, it does not -- we do not expend what

24

you have been calling, I think, state-appropriated dollars through MSRDP.

The UTHSCH Fact Book sets forth definitions of the different fund sources used by UTHSCH and confirms that the funds generated through the MSRDP ambulatory clinics, like UT Physicians, are called "designated funds" by UTHSCH.  CR ___.

> One primary purpose of publishing the Fact Book is to communicate clearly fiscal issues and terms to the members of the university community. Readers should note that budget tables use terms that collectively or individually describe organizational entities that may not necessarily be reflected on organization charts but that may be significant elements of the institution's financial picture. Among the financial reporting categories are those described below.
> ***
> **MSRDP Administration**
> Medical Services Research and Development Plan (MSRDP) Physician Business Services is managed by UT Physicians, its affiliated non-profit, physician corporation.
>
> To aid in understanding types of fund groups that are included in many budget tables, the following definitions are included:
>
> **Administrative Recovery**
> Funds generated from reimbursements to state funds from university programs that are not state funded and that generate revenue. For example, a clinical operation that generates revenue and is intended to be self-supporting may use a university support department (e.g., payroll) to some extent. That state-funded support department then minimally subsidizes the revenue-generating department. The Administrative Recovery formula is a tool to recoup the impact on the total state funds budget of providing such services.
>
> **Auxiliary Enterprise Funds**
> Funds generated from fees charged to students, faculty or staff for services furnished by an auxiliary enterprise (i.e., parking, university

housing and the recreation center). Auxiliaries may be regarded as being similar to private concerns in that they are self-supporting.
***

**Designated Funds**
Funds generated by service-providing entities that generate revenue from external sources (e.g., MSRDP ambulatory clinics).

It appears one reason UTHSCH is not complying with the NACUBO guidelines regarding the classification of "Auxiliary Enterprises-Other" is because Mr. Dillon has not been to a NACUBO meeting in while, although the Fact Book indicates that it is complying with NACUBO definitions. CR 1038.

107

**Q. Does the U.T. Health Science Center follow the standards or regulations promulgated by NACUBO?**
        **MR. McCLURE: Object to form.**
  **A. You know, I'm struggling a little bit. It's been a while since I've been to a NACUBO meeti2g, I confess.** The -- you know, I'm

The Appellants offered conclusive evidence that UT Physicians is an auxiliary enterprise. As such, UTP is an independent contractor as a matter of law because it is an auxiliary enterprise of UTHSCH. *See*, TEX. GOV'T CODE §2252.061. By definition, an independent contractor is not an employee under the TTCA. TEX. CIV. PRAC. & REM. CODE §101.001(2). At the very least, fact issues exist regarding UTP's status as an independent contractor because it is an "auxiliary enterprise" and the trial court erred in granting UTP's motion to dismiss.

26

**III.** **The Trial Court Erred in Granting the Plea to the Jurisdiction Because the Lenoirs Alleged that Shana Lenoir's Death Was Proximately Caused By An Employee's Use of Tangible Physical Property.**

Alternatively, if the Court determines that UT Physicians is a governmental unit entitled to raise sovereign immunity, the trial court erred in granting UT Physician's plea to the jurisdiction because the Lenoirs pled a cause of action against its employee, Nurse Matthews, that waived sovereign immunity.

The Texas Tort Claims Act provides a limited waiver of sovereign immunity. TEX. CIV. PRAC. & REM.CODE §§ 101.001-.109. The Tort Claims Act expressly waives sovereign immunity in three areas: "'use of publicly owned automobiles, premises defects, and injuries arising out of conditions or use of property.'" *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex.2004); TEX. CIV. PRAC. & REM. CODE §101.021 (2). Section 101.021 (2) states:

> Sec. 101.021. GOVERNMENTAL LIABILITY. A governmental unit in the state is liable for:
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Here, the Lenoirs alleged that Shana Lenoir's death was proximately caused by a prescription progesterone injection that was negligently administered by Nurse Matthews, UTP's employee, at a UTP clinic. CR 125. Since the Lenoirs

27

alleged that Shana Lenoirs' death was caused by the negligent use of tangible physical property by an alleged governmental employee in the scope of her employment, their cause of action falls within the statutory waiver of sovereign immunity found in TEX. CIV. PRAC. & REM. CODE §101.021 (2).

Contrary to Defendant UT Physicians' mischaracterization of Plaintiffs' claims regarding Defendant Matthews injection of the prescription medication that killed Shana Lenoir, a TTCA does exist for her conduct. In *Wise Reg'l Health Sys. v. Brittain*, 268 SW 3d 799, 807 (Tex.App.—Ft. Worth 2008, no pet.), the court held that a TTCA claim existed for a nurse's administration of medication to a patient when she should have refused to do so based on the patient's condition. In *Brittain*, the court held:

> Viewing the pleadings and evidence in the light most favorable to Brittain—specifically the pleading that alleges Gentry's "death [was] proximately caused by the condition or use of [certain medications]" and the testimony from Dr. Varon that the nurses administered the medications to Gentry when they should have refused to do so—we hold that the pleadings and evidence suffice to establish a "use" of medications in this case sufficient to waive immunity under the TTCA.

*Id*. at 807.

Other appellate courts have also affirmed the denial of pleas to the jurisdiction in cases involving the negligent injection of medications. *See, Univ. of Health of Science Ctr. v. Stevens*, 330 S.W.3d 335, 336-37 (Tex. App.—San Antonio 2010, no pet.)(negligent injection of anesthesia); *Angleton Danbury Hosp.*

28

*Dist. v. Chavana*, 120 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (negligent injection of saline).

The Lenoirs also relied upon the expert report and curriculum vita of Dr. Frank J. Battaglia, a board-certified obstetrician and gynecologist. CR 78; CR _____. Dr. Battaglia stated his opinions that Defendant Angela Matthews administered the injection that proximately caused Lenoir's death when she should not have because the injection was contraindicated since Lenoir was pregnant with twins and the order had not been properly made by a licensed physician. CR _____. Dr. Battaglia's opinion that the progesterone injection was contraindicated for Shana Lenoir because she was pregnant with twins is supported by several articles that were published before by the progesterone injection was administered to Shana Lenoir by UT Physician employee, Angela Matthews, on April 8, 2010. CR _____.

The trial court erred in granting UTP's plea to the jurisdiction because the Lenoirs pled a waiver of sovereign immunity based upon the use of tangible physical property by an alleged government employee and this Court should reverse and remand the case for further proceedings.

**CONCLUSION**

WHEREFORE PREMISES CONSIDERED, the Appellants respectfully request an order overruling the trial court's order granting Appellees UT

Physicians plea to the jurisdiction, remanding this case to the trial court for further proceedings and awarding the Appellants their costs and any and all other general and equitable relief to which they may justly be entitled.

Respectfully submitted,

**THE GOURRIER LAW FIRM, PLLC**
By:   /s/   Joseph M. Gourrier         .
    JOSEPH M. GOURRIER
    Texas State Bar No. 24007258
    530 Lovett Boulevard, Suite B
    Houston, Texas 77006
    Telephone:  713-533-9077
    Facsimile: 713-533-9376
    joseph@gourrierlaw.com

**ATTORNEY FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), Appellants certify that this brief is 6,920 words which is in compliance with Texas Rule of Appellate Procedure 9.4(i)(2).

By:    /s/ Joseph M. Gourrier
        JOSEPH M. GOURRIER
        Texas State Bar No. 24007258

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing instrument has been served upon all parties of record via certified mail return receipt requested and/or facsimile on the 5th day of January, 2015.

| | |
|---|---|
| Greg Abbott<br>Daniel T. Hodge<br>David C. Mattax<br>John P. Giberson<br>Jason Warner<br>OFFICE OF THE ATTORNEY GENERAL<br>Tort Litigation Division, MC-030<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>Telephone: (512) 463-2197<br>Facsimile: (512) 463-2224<br>***Attorneys for Appellee U.T. Physicians*** | David Iler<br>Jaqualine McMillan<br>Fulbright & Jaworski, LLP<br>1301 McKinney, Suite 5100<br>Houston, TX 77010-3095<br>Telephone: (713) 651-5151<br>Facsimile: (713) 651-5246<br>***Attorneys for Appellee U.T. Physicians*** |

    /s/  Joseph M. Gourrier   .
Joseph M. Gourrier